UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | CRIMINAL NO. H-16-273 |
| v. § | |
| § | |
| MARCO ANTONIO ZUNIGA § | |

## PLEA AGREEMENT

The United States of America, by and through Kenneth Magidson, United States Attorney for the Southern District of Texas, and Robert Stabe, Assistant United States Attorney, and the defendant, Marco Antonio Zuniga ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Count Five of the Criminal Indictment. Count Five, as reduced on the motion of the government, charges Defendant with Possession with intent to distribute 5 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B). Defendant, by entering this plea, agrees that he/she is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The **statutory** maximum penalty for each violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B) is imprisonment of not less than 5 years or more than 40 years and a fine of not more than $5 million. Additionally, Defendant may receive a term of supervised release after imprisonment of at least 4 years. *See* Title 18, United States Code, sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he/she should

violate the conditions of any period of supervised release which may be imposed as part of his/her sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a)(3) and 3583(e)(3). Defendant understands that he/she cannot have the imposition or execution of the sentence suspended, nor is he/she eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his/her immigration status if he/she is not a citizen of the United States. Defendant understands that if he/she is not a citizen of the United States, by pleading guilty he/she may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty.

### Waiver of Appeal and Collateral Review

5. Defendant is aware that Title 28, United States Code, section 1291, and Title 18, United States Code, section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, section 2255, affords the right

to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

8. The United States agrees to each of the following:

(a) If the Defendant pleads guilty to Count Five of the criminal indictment, the United States will move to reduce Count Five to the lesser included offense of Possession with intent to distribute 5 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a) and 841(b)(1)(B);

(b) If Defendant pleads guilty to Count Five of the criminal indictment and persists in that plea through sentencing, and if the Court accepts this plea agreement, the United States will move to dismiss the remaining counts pending against the Defendant at the time of sentencing;

(c) If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

9. The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

10. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

11. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

12. Defendant understands that by entering into this agreement, he/she surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

   (a) If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

   (b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his/her attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his/her own behalf. If the witnesses for Defendant would not appear voluntarily, he/she could require their attendance through the subpoena power of the court; and

   (c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he/she could testify on his/her own behalf.

## Factual Basis for Guilty Plea

13. Defendant is pleading guilty because he/she is in fact guilty of the charges contained in Count Five of the Criminal Indictment. The parties agree that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On November 3, 2015, during the court authorized interception of co-defendant Frank FLORES' cellular telephone, agents intercepted calls indicating that FLORES received what agents believed was nine ounces of methamphetamine and was looking to sell them.

6

On November 4, 2015 Navasota Police Department (NPD) investigator Mike Mize directed a NPD confidential source to contact co-defendant Beverly MOSLEY (a known methamphetamine customer of Frank Flores') and ask for the price of eight ounces of methamphetamine. Later the same day, the CS sent a text message to Beverly Mosley and asked what would be the cost for 8 ounces. Mosley responded via text message "Ok let me see."

According to tolls record for co-defendant Chance Nutt's cell phone, Mosley and Nutt were in communication during this timeframe. Nutt is Mosley's ex-husband.

At approximately 2:55 PM, Frank Flores received a call from Chance Nutt. During the conversation, Nutt asked Flores for a price for "8". Flores said he could probably do "3600." Nutt then said he might have trouble making any money on the deal at that price.

At approximately 2:57 PM, Flores received an incoming call from defendant Marco Zuniga. During the conversation, Flores told Zuniga that he is trying to get rid of that work (referring to the methamphetamine) and that Nutt called for a price for "8". Flores told Zuniga that he told him "36". Zuniga asked Flores who it was and Flores said "it's a white boy, man. One of my boys." Zuniga said "charge him low so you can get rid of 'em."

At approximately 4:00 PM, Beverly Mosley sent a text message to the CS saying that the 8 ounces of methamphetamine would cost $575 an ounce. The CS sent a text message to Beverly Mosley asking if they could meet at Rudy's BBQ on 290. This was the site of two prior controlled undercover purchases of methamphetamine from Mosley. Mosley said yes and asked what time the CS would be there and the CS said in about 1 hour or so.

At approximately 4:08 PM, Frank Flores received an incoming call from Chance Nutt. Nutt asked if Flores could go to $430 an ounce for a total of $3440 and Flores agreed. Nutt then asked Flores to meet at the barbeque place on 290. Flores then sent a text message to Marco Zuniga asking him to call Flores as soon as possible.

At approximately 4:10 PM, Flores received an incoming text message from Chance Nutt. The message read "8 and one half," indicating that Nutt wanted eight and a half ounces of methamphetamine.

At approximately 4:28 PM, surveillance observed Frank Flores depart from his house in a grey Chevy Monte Carlo. Flores sent a text message to Marco Zuniga telling Zuniga that Flores needed to meet at his house right away.

At approximately 4:39 PM, Frank Flores placed a call to Clifton Johnson. During the call, Flores asked Johnson if he wanted to ride with him. Flores also told Johnson that he is trying to get ahold of Marco Zuniga because he had "work" at his house and needed to pick it up

7

so he can make some money. "Work" is a code for drugs. Flores told Johnson that he will pick him up on Marco's street.

At approximately 4:43 PM, surveillance observed Frank Flores, driving the grey Monte Carlo, arrive at the residence of Marco Zuniga. After a few minutes, surveillance observed the grey Monte Carlo depart the residence.

At approximately 4:49 PM, surveillance observed the grey Monte Carlo arrive at a trailer house in Houston, Texas. Surveillance also observed that the vehicle was occupied by Frank Flores and Clifton Johnson.

At approximately 5:03 PM, Flores received a call from Marco Zuniga. During the conversation, Flores told Zuniga that he already went by his (Zuniga's) house to pick it up. Flores also told Zuniga that he was at Nick's bagging it up.

At approximately 5:07 PM, surveillance observed the grey Monte Carlo depart the trailer house.

At approximately 5:19 PM, TFO Cullen Brady observed a marked Harris County Sheriff's Department patrol unit attempt to conduct a traffic stop of the grey Monte Carlo. TFO Brady observed that FLORES did not stop and continued north on JFK Boulevard then east on Greens road. TFO Brady observed a white plastic bag thrown out the passenger window from the grey Monte Carlo at the corner of Greens Road and Vickery. Trailing units SA Anthony Armour and SA Andrew Meservey stopped at the intersection and located a white plastic bag on the side of the road in the 5100 block of Greens Road (intersection of Greens Road and Vickery Drive) in Houston, Texas. SA Shelby Hamilton arrived and seized the plastic bag which contained approximately 291.8 grams of methamphetamine.

At approximately 5:25PM, Flores called Zuniga and told Zuniga that he was being chased by the Fed's. Zuniga asked Flores if he has "that" on him and Flores responded that he already "threw it."

At approximately 5:26PM, Flores received a call from Zuniga. Zuniga asked Flores where he threw it. Flores responded that he threw it on the side by the beltway.

Starting at approximately 5:28PM, agents intercepted a series of text messages and calls between Zuniga and co-defendant Joaquin Maranon regarding Flores being chased by the police. In one call, Zuniga told Maranon that "they're following him right now" and that "he said that he threw it." Zuniga also told Maranon that Zuniga told Flores to throw away his old phone. Zuniga also sent a text message to Maranon at 5:40PM that said "Check on feeder then on da side of freeway its in red tupawear." Drug Exhibit 8 was found on the side of the road contained in a Tupperware container with a red lid.

8

At approximately 5:30 PM, Harris County Sheriff's Department patrol units were finally able to stop Flores' vehicle at the intersection on the southbound Highway 59 feeder road and Aldine Mail Route. Flores was arrested on state charges of felony evading. The passenger, Clifton Johnson, was identified and released. Johnson was given Flores' cellular telephone. Co-defendant Joaquin Maranon picked up Johnson.

The methamphetamine seized was labeled as Drug Exhibit 8 and had a gross weight of 291.8 grams. Drug Exhibit 8 was sent to DEA's South Central Laboratory for analysis. Drug Exhibit 8 was found to be Methamphetamine Hydrochloride and have a net weight of 234.9 grams and a purity level of 98.6% (230 grams actual).

At approximately 9:23PM, Zuniga, using Flores' phone, received a call from someone named "Yogi." During the conversation, Zuniga told Yogi that Flores was arrested and that Flores threw the dope out the window. Zuniga further told Yogi that "he (Flores) had my dope, He had 9 zips of clear (code for 9 ounces of crystal methamphetamine)."

**Breach of Plea Agreement**

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Restitution, Forfeiture, and Fines – Generally**

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he/she will make a full and complete disclosure of all assets over which he/she exercises direct or indirect control, or in which he/she has any financial

9

interest. Defendant agrees not to dispose of any assets or take any action that would affect a transfer of property in which he/she has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his/her assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

## Restitution

19. If applicable, Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $ 0. Defendant understands and agrees that the

Court will determine the amount of restitution to fully compensate the victim(s). Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, the restitution order imposed by the Court.

**Fines**

20. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

**Complete Agreement**

21. This written plea agreement, consisting of 13 pages, including the attached addendum of Defendant and his/her attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him/her and that he/she is pleading guilty freely and voluntarily because he/she is guilty.

22. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on FEBRUARY 9, 2017.

*/s/ Marcos Antonio Pineda*
Defendant

Subscribed and sworn to before me on FEBRUARY 9, 2017.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: */s/ Shannon Jones*
Deputy United States District Clerk

APPROVED:

Kenneth Magidson
United States Attorney

By: */s/ R. Stabe*
Robert Stabe
Assistant United States Attorney
Southern District of Texas

*/s/*
Attorney for Defendant

12

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL NO. H-16-273 |
| v. | § | |
| | § | |
| MARCO ANTONIO ZUNIGA | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his/her rights with respect to the pending criminal indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____  2/9/17
Attorney for Defendant          Date

I have consulted with my attorney and fully understand all my rights with respect to the criminal indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____  2/9/17
Defendant                       Date

13